UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
  ANTHONY J. ALLEGRINO II,

                   Plaintiff,

v.

  RUSKIN MOSCOU FALTISCHEK, P.C.,
  et al.,

               Defendants.
  ---------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

19-CV-08900 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Anthony J. Allegrino II ("Plaintiff"), a disbarred attorney[1] proceeding *pro se*, commenced this action on September 25, 2019. (Doc. 1). On February 9, 2020, Plaintiff filed an Amended Complaint (Doc. 21), and on February 10, 2020, he filed a Second Amended Complaint (Doc. 28, "SAC"), which is the operative pleading in this action. The Second Amended Complaint alleges legal malpractice against defendants Ruskin Moscou Faltischek, P.C. (the "Ruskin Firm"), John G. Farinacci ("Farinacci"), Martin A. Cohen ("Cohen"), and Bruce Dunn ("Dunn" and collectively, "Defendants"), and seeks a damages award of $40 million in connection with certain purported legal engagements, which Defendants contend are based upon falsified retainer agreements.

---

[1] In 2005, Plaintiff was charged by the California Supreme Court with acts of moral turpitude in three separate client cases, resulting in a two-year suspension. *Matter of Anthony J. Allegrino II*, State Bar Case No. 02-O-13815/Supreme Court Case No. S132789. Then, in the *Matter of Anthony J. Allegrino II*, State Bar Case No. 04-O-12846/Supreme Court Case No. S154342, Plaintiff was charged with failing to perform competently, charging an illegal or unconscionable fee, misappropriation of client funds, making false representations, failing to return unearned fees, and improper withdrawal from representation. (*See* Doc. 48-6–48-7, Farinacci Decl. Ex. F; Doc. 50-9, Puglielle Decl. Ex. H, "California State Bar Court Opinion on Review"; *see also* California Appellate Courts Case Information Supreme Court Docket, available at https://appellatecases.courtinfo.ca.gov (last visited Feb. 3, 2021)). Plaintiff was disbarred effective November 9, 2007. *In the Disciplinary Matter of Anthony Joseph Allegrino*, No. 2:08-MC-0008 (C.D. Cal. Jan 25, 2008); *see also* The State Bar of California Attorney Licensee Profile, available at http://members.calbar.ca.gov/fal/Licensee/Detail/200905 (last visited Feb. 3, 2021).

On April 17, 2020, after this matter was reassigned to me,[2] the Court issued an Order granting Defendants' requests to move to dismiss the Second Amended Complaint and set a briefing schedule for the motions. (Doc. 44). On May 29, 2020, the Ruskin Firm and Farinacci (together, the "Ruskin Defendants") filed their motion to dismiss (Doc. 47; Doc. 49, "Ruskin Br."), and Cohen and Dunn (together, the "Cohen Defendants") also filed their motion to dismiss (Doc. 50; Doc. 51, "Cohen Br."). On June 12, 2020, Plaintiff filed his opposition to the Ruskin Defendants' motion (Doc. 55, "Pl. Ruskin Opp'n") and the Cohen Defendants' motion (Doc. 56, "Pl. Cohen Opp'n") in two separate filings.[3] The motions to dismiss were fully briefed on July 2, 2020, with the filing of Defendants' reply papers. (Doc. 59, "Ruskin Reply"; Doc. 60; Doc. 61, "Cohen Reply").

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

Plaintiff contends that he was the sole beneficiary of a $40 million estate. (SAC ¶ 12). He alleges that he engaged Defendants as legal counsel to represent him in connection with his claim to that estate pursuant to various retainer agreements, that Defendants committed legal malpractice in the course of those engagements, and that due to Defendants' legal malpractice he has suffered $40 million in damages. (*See generally* SAC). The allegations underpinning this action are set forth below.[4]

---

[2] This case was pending previously before Judge Karas.

[3] Plaintiff annexed to his memoranda in opposition a number of exhibits, unsupported by an affidavit as required by Local Civil Rule 7.1. The Court has discretion to overlook a failure to comply with Local Civil Rule 7.1, and exercises such discretion on this motion. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016).

[4] The facts recited herein are taken from the allegations of the Second Amended Complaint as well as certain documents proffered by the parties in connection with these motions. On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated

I.     The Underlying Probate Proceeding

       A.   The Cohen Defendants' Engagement

Plaintiff alleges that he engaged the Cohen Defendants in 2013 to submit a will (the "Allegrino Will") to the Richmond County Surrogate's Court in the matter entitled *Estate of Roman Blum*, No. 2012-29 (the "Probate Proceeding") and to "handle any and all legal matters related to the [Probate Proceeding]" (the "2013 Cohen Engagement") (*Id.* ¶ 59). He states that he paid the Cohen Defendants a $2,000.00 retainer in connection with the 2013 Cohen Engagement. (*Id.* ¶ 60). On or about September 18, 2013, Plaintiff filed a Petition for Probate of the Allegrino Will in the Probate Proceeding (the "Probate Petition"). (*See* Doc. 48-1, Farinacci Decl. Ex. A; Doc. 50-4, Puglielle Decl. Ex. C; Doc. 55-8, Pl. Ruskin Opp'n Ex. H; Doc. 56-8, Pl. Cohen Opp'n Ex. H, "Dismissal Ord." at 2).[5] On or about May 13, 2015, the Public Administrator of Richmond County moved to dismiss the Probate Petition. (Dismissal Ord. at 2; *see also* Doc. 56-6, Pl. Cohen Opp'n Ex. F at 3-7). On August 12, 2015, prior to a scheduled hearing, the Surrogate's Court received a fax from Cohen seeking to withdraw the Probate Petition, and separately received a package of documents from Plaintiff claiming to be the due diligence affidavit required by the Surrogate's Court with a cover letter alleging that Plaintiff was unable to locate his attorney. (Doc. 56-6, Pl. Cohen Opp'n Ex. F at 9).  On or about September 9, 2015, the Cohen Defendants moved

in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[5] The filings in the Surrogate Court referenced herein are public documents of which the Court may take judicial notice, and thus, are properly considered on these motions. *See Mangiafico*, 471 F.3d at 398. References to the parties' exhibits correspond to the pagination generated on ECF.

to be relieved as counsel for Plaintiff in the Probate Proceeding, and on September 17, 2015, the Surrogate's Court granted the unopposed motion. (*Id.* ¶ 61; Doc. 50-3, Puglielle Decl. Ex. B, "Sept. 17 Ord."; Doc. 50-6, Puglielle Decl. Ex. E). The Surrogate's Court also stayed discovery for thirty days to permit Plaintiff to obtain new counsel. (Sept. 17 Ord. at 2).

On January 12, 2016, the Surrogate's Court issued its decision granting the Public Administrator's May 13, 2015 motion to dismiss Plaintiff's Probate Petition (the "January 2016 Dismissal Order"), on the grounds that Plaintiff failed to complete and submit the necessary due diligence and have the Allegrino Will admitted to probate, and otherwise failed to prosecute his case. (Dismissal Ord. at 2-3). In addition, in light of allegations "regarding the genuineness of the signature" on the Allegrino Will which the Surrogate's Court stated it could not ignore, it referred the matter to the Office of the Richmond County District Attorney to investigate the "circumstances surrounding the execution of the [Allegrino Will]." (*Id.* at 3).

Plaintiff alleges that despite having been relieved as counsel, and despite the dismissal of the Probate Petition, Cohen continued to render legal services to Plaintiff in connection with the Probate Proceeding "under a subsequent Retainer Agreement executed on June 21, 2016." (SAC ¶ 61). Plaintiff further alleges that on or about June 21, 2016, the Cohen Defendants accepted $25,000.00 from Plaintiff on the subsequent retainer agreement to "finish up the Case." (*Id.*). The Cohen Defendants dispute the authenticity of the alleged subsequent retainer agreement with Plaintiff in connection with the Probate Proceeding. (Cohen Br. at 4 n.9, 10-11).

B. The Ruskin Defendants' Engagement

On or about June 30, 2016, Plaintiff entered into a retainer agreement with the Ruskin Firm (the "First Ruskin Retainer"). (SAC ¶¶ 30-32; Doc 48-3, Farinacci Decl. Ex. C, "First Ruskin

Ret.").[6] Pursuant to the terms of the First Ruskin Retainer, the engagement was "for the limited purpose" of reviewing the record and conducting research to determine whether to pursue an appeal of the January 2016 Dismissal Order, and called for a $7,500.00 retainer. (First Ruskin Ret. at 2-3). Plaintiff alleges that on June 30, 2016, he paid the Ruskin Defendants "for representation of Plaintiff in the [Probate Proceeding] with one check for $7,500.00 marked "retainer" and one check for $1,000.00 marked "escrow." (SAC ¶ 32).

On or about August 25, 2016, the Ruskin Firm agreed to represent Plaintiff in an appeal of the January 2016 Dismissal Order pursuant to a second engagement letter executed by Plaintiff on September 26, 2016 (the "Second Ruskin Retainer"). (SAC ¶¶ 34-37; Doc. 48-4, Farinacci Decl. Ex. D; Doc. 55-4, Pl. Ruskin Opp'n Ex. D, "Second Ruskin Ret.").[7]  The Second Ruskin Retainer called for an initial retainer in the amount of $50,000.00 and stated that it is "strictly limited . . . to . . . the appeal." (Second Ruskin Ret. at 2).[8] Indeed, the Second Ruskin Retainer stated expressly that the Ruskin Firm's representation "<u>does not</u> include any proceedings in the Surrogate's Court related to the Matter, whether on remand to the Surrogate's Court by the Appellate Division or otherwise." (*Id.* at 3 (emphasis in original)). Plaintiff alleges that on September 27, 2016, he paid

---

[6] The Court may consider the First Ruskin Retainer on this motion, as Plaintiff referred to it in the Second Amended Complaint (SAC ¶¶ 30-32), and "relie[d]" on the document's "terms and effects." *Mangiafico*, 471 F.3d at 398. Indeed, when there is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quotation marks and citation omitted), it may be considered by the Court on a motion to dismiss.

[7] For the same reasons applicable to the First Ruskin Retainer, the Court may properly consider the Second Ruskin Retainer on this motion. Moreover, although not annexed to the operative pleading, Plaintiff had annexed the Second Ruskin Retainer to his original Complaint (*see* Doc. 1 at 12-17). As discussed *infra*, the version of the Second Ruskin Retainer offered by Plaintiff differs from the version offered by the Ruskin Defendants in that it includes additional handwriting on the first page thereof.

[8] The Court also notes that the Second Ruskin Retainer includes a forum selection clause for disputes in "the Supreme Court of the State of New York, County of Nassau." (Second Ruskin Ret. at 6).

the Ruskin Defendants $50,000.00 for the appeal, and an additional $130,000.00 "towards the [Probate Proceeding]." (SAC ¶ 43).[9]

## II.   Subsequent Events in the Probate Proceeding

On or about March 28, 2017, Plaintiff received a citation from the Surrogate's Court to appear on April 26, 2017. (SAC ¶ 48; Doc. 55-5, Pl. Ruskin Opp'n Ex. E at 4; Doc. 56-6, Pl. Cohen Opp'n Ex. F at 2, "Citation"). The Citation concerned an application to issue letters of Administration to Teresa Musial (the "Movant") and Mark T. Zawinsky, Esq. in the Probate Proceeding, and in connection with Movant's application, to deny probate of the Allegrino Will on the ground that it was not a valid will. (*See generally* Citation). Plaintiff alleges that on or about March 29, 2017, he forwarded a copy of the Citation and certain motion papers to the Ruskin Defendants. (SAC ¶ 48). By letter dated April 21, 2017 (the "April 21, 2017 Ruskin Letter"), the Ruskin Defendants confirmed receipt of a March 29, 2017 letter from Plaintiff[10] as well as the Citation "subsequently sent" to them. (*Id*. ¶ 49; Doc. 48-5, Farinacci Decl. Ex. E; Doc. 55-5, Pl. Ruskin Opp'n Ex. E, "Ruskin Ltr." at 2).[11] The Ruskin Defendants stated that they had not been engaged to represent Plaintiff in the Probate Proceeding, the engagement to which they had agreed

---

[9] Specifically, Plaintiff alleges that, while "stranded in Mexico without a passport or funds" (SAC ¶ 33), he wired $180,000.00 to the Ruskin Defendants "towards services which were comprised of $50,000.00 for the appeal and an additional $130,000,00 towards the [Probate Proceeding]" (*id*. ¶¶ 38, 43). The Ruskin Defendants deny receipt of the either payment. Resolution of this dispute, however, is not necessary to the Court's analysis herein.

[10] A letter from Plaintiff dated March 29, 2017 addressed to Farinacci was annexed to the original Complaint as Exhibit C (Doc. 1 at 20-22), and is offered by Plaintiff in opposition to the Ruskin Defendants' motion (Doc. 55-9, Pl. Ruskin Opp'n Ex. I at 6-7). Although not relevant to the analysis herein, the Court notes that Plaintiff's March 29, 2017 letter did not mention the Citation or indicate that the Citation was enclosed therewith.

[11] The Court may consider the April 21, 2017 Ruskin Letter on this motion as Plaintiff referenced the letter in his Second Amended Complaint (SAC ¶ 49), does not contest its authenticity or accuracy, and in fact, offers the April 21, 2017 Ruskin Letter as Exhibit E to his opposition to the Ruskin Defendants' motion. *See Nicosia*, 834 F.3d at 231.

was solely in connection with an appeal, they had not received the retainer payment required by the agreement, and they would not appear on his behalf on the return date of the Citation "or at any other time or in any other manner." (Ruskin Ltr. at 2-3). Although Plaintiff alleges in the Second Amended Complaint that he did not receive the April 21, 2017 Ruskin Letter until after the return date of the Citation (*i.e.*, April 26, 2017) (SAC ¶ 49), Plaintiff maintains in opposition to the Ruskin Defendants' motion that he "immediately responded via federal express" by letter to the Ruskin Defendants on or about April 22, 2017 (Doc. 55-9, Pl. Ruskin Opp'n at 4, Ex. I at 2-5).

Plaintiff failed to appear on the return date of the Citation on April 26, 2017 (the "April 26, 2017 Return Date"). (Doc. 55-6, Pl. Ruskin Opp'n Ex. F; Doc. 56-4, Pl. Cohen Opp'n Ex. D, "July 2017 Ord." at 2-3). Counsel for the Public Administrator, the Court-appointed Guardian ad Litem for unknown heirs, and counsel for the Attorney General requested that a hearing be held also in an effort to deny the Allegrino Will. (*Id*. at 2). Counsel for the Movant, however, objected to such hearing requesting instead that the Movant's motion be granted in its entirety due to Plaintiff's default. (*Id*.). The Surrogate's Court denied the requested hearing, but provided all interested parties "the opportunity to submit any papers of their choosing stating their respective positions with supporting documentation to the Court by July 30, 2017." (*Id*. at 3). The Surrogate's Court also noted that it had previously dismissed the Probate Petition on procedural grounds and referred the matter to the District Attorney for an investigation into the execution of the Allegrino Will. (*Id*.). Nonetheless, once all submissions were received by the Surrogate's Court, it stated that "a determination will be made . . . regarding the finality of [the Allegrino Will]." (*Id*.).

On September 29, 2017, the Surrogate's Court rendered its decision denying the Allegrino Will (the "Surrogate's Decision"), following the submission of papers from the Movant, counsel

for the Public Administrator, and the Guardian ad Litem for unknown heirs. (SAC ¶ 51; Doc. 48-2, Farinacci Decl. Ex. B; Doc. 50-5, Puglielle Decl. Ex. D; Doc. 55-7, Pl. Ruskin Opp'n Ex. G; Doc. 56-5, Pl. Cohen Opp'n Ex. E, "Surr. Dec."). The Surrogate's Court did not receive any submission from Plaintiff. (Surr. Dec. at 2-3). The Surrogate's Decision detailed the reasons for the denial, including the results of a forensic examination finding it highly probable that the signature on the Allegrino Will was "not genuine"; and the testimony given by the witnesses of the Allegrino Will, who could not confirm the formal requirement of due execution that the testator "declared to them that the instrument was his will." (Surr. Dec. at 3-4). The Allegrino Will was denied with prejudice "based upon a review of all papers submitted, the facts and lengthy history of this matter, the failure of [Plaintiff] to appear or file papers in this proceeding (SCPA 509), and the failure to meet the requirements of due execution pursuant to EPTL 3-2.1(a)." (SAC ¶ 51; Surr. Dec. at 5).

Plaintiff alleges that "but for" Defendants' legal malpractice, he would have prevailed in the Probate Proceeding. (SAC ¶¶ 52, 78).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

Generally, a complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). However, an attorney, even one who has been disbarred, is not entitled to the "special solicitude" afforded to *pro se* litigants in construing the allegations of his pleading. *United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016); *Mitchell v. Con Edison*, 531 F. App'x 140, 141 (2d Cir. 2013); *Fagan v. U.S. Dist. Court for S. Dist. of New York*, 644 F. Supp. 2d 441, 449 (S.D.N.Y. 2009).

## ANALYSIS

I.   Plaintiff's Claims Against the Ruskin Defendants

Plaintiff, in the Second Amended Complaint, alleges that other than obtaining an extension of time to perfect an appeal of the January 2016 Dismissal Order, the Ruskin Defendants "never filed anything further for Plaintiff including the neglecting of filing a brief for Plaintiff's appeal."

(SAC ¶ 45). Plaintiff maintains, however, that an appeal "is not the subject of this action and is only discussed as it is part of the factual pattern." (Pl. Ruskin Opp'n at 23). Plaintiff makes clear that his malpractice claim against the Ruskin Defendants "stems exclusively from Defendants['] representation of Plaintiff in the [Probate Proceeding]" and relates solely to the Ruskin Defendants' purported failure to appear on the April 26, 2017 Return Date and take action to protect Plaintiff's interests in the Probate Proceeding. (*Id.* at 23-24). Plaintiff did not otherwise respond to the Ruskin Defendants' arguments for dismissal of any claims for malpractice in connection with an appeal. Accordingly, any claims in the Second Amended Complaint related to an appeal have been abandoned and are therefore dismissed. *See Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-3793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014).

With respect to Plaintiff's claims of malpractice against the Ruskin Defendants in connection with the Probate Proceeding, Plaintiff alleges in the Second Amended Complaint that on June 30, 2016, he had several telephone conversations with the Ruskin Defendants concerning their retention, which were to be memorialized in "separate fee agreements to be sent by [the Ruskin] Defendants." (SAC ¶ 31). Plaintiff states, in his opposition, that on June 30, 2016, he retained the Ruskin Firm "specifically for" the Probate Proceeding to probate the Allegrino Will. (*Id.*). The First Ruskin Retainer, which is dated June 30, 2016, states however, that the engagement was "for the limited purpose" of reviewing the record and conducting research to determine whether to pursue an appeal of the January 2016 Dismissal Order. (First Ruskin Ret. at 2-3). It further states, "[t]o be clear, neither [the Ruskin Firm] nor you are committed hereby to: (a) pursue the Appeal or (b) [the Ruskin Firm's] representation of you on the Appeal." (*Id.* at 3). The First

Ruskin Retainer is silent as to any purported agreement to represent Plaintiff in connection with the Probate Proceeding.

Retainer agreements are contracts subject to the traditional rules of contract interpretation. *Feder Kaszovitz LLP v. Rosen*, No. 17-CV-2954, 2018 WL 3708662, at *5-7 (S.D.N.Y. Aug. 3, 2018); *Fein ex rel. Estate of Fein v. Chicago Ins. Co.*, No. 01-CV-11386, 2003 WL 21688239, at *7 (S.D.N.Y. July 18, 2003). "Under New York law, 'the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.'" *Rosen*, 2018 WL 3708662, at *5 (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). "The best evidence of the parties' intent is the contract itself." *Id*. (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). "Where 'parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.'" *Id*. (quoting *W. W. W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)). To the extent a plaintiff's allegations are contradicted by a document attached to the complaint as an exhibit, or incorporated by reference, or by documents that are integral to, or explicitly referenced in, the pleading, the plaintiff's allegations are simply insufficient to defeat a motion to dismiss. *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). Moreover, an attorney may not be held liable for legal malpractice for failing to act outside the scope of a retainer agreement. *Portus Singapore PTE LTD v. Kenyon & Kenyon LLP*, 449 F. Supp. 3d 402, 411-12 (S.D.N.Y. 2020) (citing *Attallah v. Milbank, Tweed, Hadley & McCloy, LLP*, 93 N.Y.S.3d 353, 356 (App. Div. 2019)); *Prout v. Vladeck*, 334 F. Supp. 3d 599, 614-15 (S.D.N.Y. 2018) (citing *AmBase Corp. v. Davis Polk & Wardwell*, 866 N.E.2d 1033, 1037 (N.Y. 2007)).

The First Ruskin Retainer cannot be read to include the Probate Proceeding in its scope. Indeed, in apparent recognition of the clear and unambiguous language of the First Ruskin Retainer, Plaintiff alters his theory in his opposition brief, arguing instead that:

> [The Ruskin Defendants] neglected to send a written retainer agreement specifically for [the Probate Proceeding] so the agreement was noted by Plaintiff on September 26, 2016, with . . . Farinacci's prior consent from the last conversation with Plaintiff in August 2016 when it was returned to [the Ruskin] Defendants with the understanding that a formal agreement would follow from [the Ruskin] Defendants when they had a chance to draft it.

(Pl. Opp'n at 6). Thus, Plaintiff concedes tacitly that the scope of the First Ruskin Retainer did not include the Probate Proceeding, and instead, the purported agreement to represent him in the Probate Proceeding is set forth in the Second Ruskin Retainer. Accordingly, any claim of malpractice allegedly arising out of the First Ruskin Retainer with respect to the Probate Proceeding is dismissed, as such a claim falls outside the scope of the parties' unambiguous agreement, and moreover, as set forth above, Plaintiff appears to have abandoned this theory in his opposition brief.

Plaintiff's allegations and arguments concerning the Second Ruskin Retainer fare no better than those regarding the First. The Second Ruskin Retainer stated that it was "strictly limited" to representing "[Plaintiff] in the appeal." (Second Ruskin Ret. at 2). To be sure, the Second Ruskin Retainer stated explicitly: "This representation also <u>does not</u> include any proceedings in the Surrogate's Court related to this Matter, whether on remand . . . or otherwise." (*Id*. at 3 (emphasis in original)). It stated further that "[a]ny such additional representations would have to be the subject of an additional and separate retainer agreement between [Plaintiff] and the [Ruskin] Firm" which neither party was bound to accept. (*Id*.). The document stated that it represented the entire

agreement between Plaintiff and the Ruskin Defendants, and that no change or waiver of any of its provisions would be effective unless set forth in writing and signed by both parties. (*Id.* at 6).

The version of the Second Ruskin Retainer offered by Plaintiff in his opposition contains handwritten notes on the first page, which are only partly legible, that appear to say "and as per telephone conversation 6/30/16 and retainer paid for completing probate at Staten Island Surrogate's Court – Estate of Roman Blum, File 2012-29." (Doc. 55-4 at 2). Plaintiff clarifies, in his opposition brief, that the notation was added by him to enlarge the scope of the Second Ruskin Retainer "with Farinacci's prior consent from the last conversation with Plaintiff in August 2016." (Pl. Ruskin Opp'n at 6). The Ruskin Defendants contend that they did not agree to Plaintiff's alteration,[12] and argue that neither purported oral discussions nor Plaintiff's alleged unilateral handwritten addition to the Second Ruskin Retainer can overcome the plain and unambiguous language set forth therein. (Ruskin Br. at 3 n.3, 7; Ruskin Reply at 8). The Court agrees.

A party seeking to enforce an alleged modification of an agreement must prove each element of requisite contract formulation, including mutual assent to its terms. *Rosen*, 2018 WL 3708662, at \*8. In other words, for his claim to survive at the motion to dismiss stage, Plaintiff must allege plausibly, *inter alia*, "a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* (citing *Stonehill Capital Mgmt. LLC v. Bank of the West*, 28 N.Y.3d 439, 448, 45 N.Y.S.3d 864, 870 (2016)); *see also Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*, 771 F. Supp. 600, 604 (S.D.N.Y. 1991) (granting motion to dismiss counterclaims where allegations of oral modification of contract was belied by the terms of the contract).

---

[12] It appears that Plaintiff has been admonished (and was disbarred) for his past unilateral addition of terms to executed retainer agreements. (*See* California State Bar Court Opinion on Review at 7, 15-16).

Plaintiff does not plead any meeting of the minds as regards a modification to the Second Ruskin Retainer. Rather, Plaintiff pleads that between his executing the Second Ruskin Retainer and his receipt of the April 21, 2017 Ruskin Letter, "Plaintiff did not receive any calls or other notices from Defendants." (SAC ¶ 47; *see id*. ¶¶ 37-49). The April 21, 2017 Ruskin Letter stated that the Ruskin Defendants had never contemplated nor agreed to represent him in the Probate Proceeding; that they would not appear on the April 26, 2017 Return Date; that they did not receive the $50,000.00 initial retainer required under the Second Ruskin Retainer, nor the purported $130,000.00 that Plaintiff claims was paid for purposes of the Probate Proceeding; and that even if they had received such funds from Plaintiff, they would have returned the checks to him. (*See* Ruskin Ltr. at 2-3).

Thus, based upon the allegations of the Second Amended Complaint, and the documents referenced therein and relied upon by Plaintiff, the Ruskin Defendants did not assent to Plaintiff's purported modification. Thus, the Probate Proceeding was outside the scope of the Second Ruskin Retainer. Put simply, Plaintiff has failed to allege plausibly any claim of malpractice against the Ruskin Defendants.

Accordingly, Plaintiff's claims alleged against the Ruskin Defendants are dismissed.

II.    Plaintiff's Claims Against the Cohen Defendants

Plaintiff alleges various failures on the part of the Cohen Defendants in connection with their representation of him in the Probate Proceeding. In particular, the Second Amended Complaint charges the Cohen Defendants with failing to appear in the Surrogate's Court "on numerous occasions" (SAC ¶ 69); failing "to file a mandated Affidavit of Merit, complete the required court order[ed] genealogical reports, and attend a court ordered hearing in open court with the witnesses to [the Allegrino Will]" (*id*. ¶ 70); failing to "refile[] the [Allegrino Will] with the

Surrogate[']s Court" (*id*. ¶ 75); failing to appear for the depositions of the witnesses to the Allegrino Will, the testimony given thereat forming a basis of the Surrogate's Decision (*id*. ¶ 66); and failing to contest or respond to the Movant's motion and Citation, or appear on the April 26, 2017 Return Date (*id*. ¶¶ 75, 77).

Plaintiff insists that his malpractice claim against the Cohen Defendants "stems exclusively from Defendants['] representation of Plaintiff in the [Probate Proceeding] and for which fees were paid on a written agreement; $25,000 on June 21, 2016." (*Id*. at 23). As is the case with the Ruskin Defendants, Plaintiff states that his claim against the Cohen Defendants relates solely to their purported failure to appear on the April 26, 2017 Return Date. (*Id.* at 23-24). Plaintiff did not otherwise respond to the Cohen Defendants' arguments for dismissal of any claims for malpractice in connection with the 2013 Cohen Engagement. Accordingly, any claims in the Second Amended Complaint related to the 2013 Cohen Engagement have been abandoned and are therefore dismissed. *See Ventillo*, 2020 WL 7496294, at *12; *30 Clinton Place Owners Inc.*, 2014 WL 890482, at *1 n.1.

Even if the Court were to entertain theories of liability stemming from the 2013 Cohen Engagement, any purported failures cited by Plaintiff occurring in connection with his retention of Cohen in 2013 are barred by the statute of limitations. The statute of limitations for a legal malpractice action in New York is three years. *Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*, 160 F. Supp. 3d 542, 548 (S.D.N.Y. 2016). "Generally, the action accrues from the date of malpractice, but the statute may be deemed tolled under the theory of continuous representation until the attorney ceases representing the client in the specific matter at issue." *Nobile v. Schwartz*, 56 F. App'x 525, 526 (2d Cir. 2003).

Plaintiff alleges that the Cohen Defendants' representation commenced on September 12, 2013 (SAC ¶¶ 59-60) and that Cohen was relieved as counsel for Plaintiff in the Probate Proceeding on September 17, 2015 (*id*. ¶ 61; Sept. 17 Ord. at 2). The depositions of Mr. Pietro Macchiarella and Mr. Salvatore Cracolici, the witnesses of the Allegrino Will, were taken on November 9, 2015. (Surr. Dec. at 4). The Probate Petition was ultimately dismissed on January 12, 2016. (Dismissal Ord. at 2-3). Plaintiff alleges that Cohen was not re-engaged until June 21, 2016. (SAC ¶ 61). Cohen's representation of Plaintiff in connection with the Probate Proceeding ceased on September 17, 2015.[13] As noted above, Plaintiff commenced this action on September 25, 2019. (Doc. 1). Thus, any purported failures occurring prior to the termination of the attorney-client relationship with Cohen in September 2015, such as the failure to appear for the witnesses' depositions, the failure to file the required due diligence or otherwise appear in Surrogate's Court on account of the Probate Petition, and the ultimate dismissal of the Probate Petition, are barred; and the continuous representation doctrine would not apply to save Plaintiff's claims against Cohen.

Plaintiff alleges that Dunn did not withdraw as counsel to Plaintiff in the Probate Proceeding and "continued to render legal services" (SAC ¶ 62), although he does not allege that he ever entered into a separate retainer agreement with Dunn. Rather, Plaintiff alleges that he re-engaged the Cohen Defendants (*id*. ¶ 61) under a "subsequent Retainer Agreement executed on June 21, 2016" (*id*.). Plaintiff annexes a copy of the purported agreement to both the Second Amended Complaint and his opposition brief. (SAC Ex. E; Pl. Cohen Opp'n Ex. B). Although it

---

[13] Although the Surrogate's Court Order relieving Cohen as counsel did not specify that Dunn was also relieved as counsel, it is not clear to the Court that Dunn ever entered an appearance as counsel on behalf of Plaintiff in the Probate Proceeding; indeed, the Order stayed discovery for thirty days to permit Plaintiff to obtain new counsel, which would have been unnecessary had Dunn continued to represent Plaintiff. (Sept. 17 Ord. at 2).

is clear that the document is incomplete, the single page offered by Plaintiff does include language describing the scope of work to be performed, which is identical to that stated in the retainer memorializing the 2013 Cohen Engagement. (*Id.*). The Cohen Defendants contend that the document is clearly a doctored version of the 2013 retainer agreement (Cohen Br. at 10-11; Cohen Reply at 4-5). While the Court notes that the purported second retainer agreement offered by Plaintiff is dubious to say the least, its authenticity is not a dispute that the Court can resolve on a motion to dismiss without the benefit of discovery.

Thus, the Court assumes that Plaintiff retained the Cohen Defendants on June 21, 2016 as he has alleged. Nevertheless, his claim of legal malpractice against the Cohen Defendants for their failure to appear on the April 26, 2017 Return Date cannot survive the motion to dismiss.  A claim for legal malpractice presents a question of law which the Court may decide on a motion to dismiss. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). "To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages. *Id.* (citing *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 573 N.Y.S.2d 981, 985 (App. Div. 1991)) (emphasis omitted).

Plaintiff contends that had the Cohen Defendants appeared on the April 26, 2017 Return Date, he would have prevailed in the Probate Proceeding as sole heir to the $40 million estate. In other words, Plaintiff's allegations of legal malpractice hinge on the Court's finding that the Cohen Defendants' failure to appear in the Surrogate's Court on April 26, 2017 proximately caused Plaintiff's alleged $40 million loss. "In order to plead causation adequately in a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, 'what would have been a favorable outcome was an unfavorable outcome. The test is whether a proper defense would have

altered the result of the prior action.'" *Frankel v. McDonough*, No. 10-CV-6106, 2011 WL 5059181, at *4 (S.D.N.Y. Oct. 24, 2011), *aff'd*, 471 F. App'x 67 (2d Cir. 2012) (quoting *Flutie Bros. v. Hayes*, No. 04-CV-4187, 2006 WL 1379594 at *4 (S.D.N.Y. 2006)).

It is well established that the requirement of "but-for" causation is "a high bar to attorney malpractice liability, [which] seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury." *Id*. (citing *Flutie Bros.*, 2006 WL 1379594 at *4). Indeed, Plaintiff acknowledges that the "burden of proof in a legal malpractice action is a heavy one." (Pl. Cohen Opp'n at 13).

"As New York courts have observed, the 'but for' prong requires the trier of fact 'in effect [to] decide a lawsuit within a lawsuit,' because it demands a hypothetical re-examination of the events at issue absent the alleged malpractice." *Littman Krooks Roth & Ball P.C. v. New Jersey Sports Prods., Inc.*, No. 00-CV-9419, 2001 WL 963949, at *3 (S.D.N.Y. Aug. 22, 2001) (citing *N. A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy & Moe Levine*, 397 N.Y.S.2d 142, 144 (1977) (Suozzi, J., concurring), *aff'd*, 380 N.E.2d 302 (1978) (affirming for the reasons in the concurring opinion)). Bald speculation and conclusory pleading of "but for" causation cannot support a claim of legal malpractice. *Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014); *see also Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 395 (S.D.N.Y. 2000) ("Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case in malpractice." (quoting *Luniewski v. Zeitlin*, 591 N.Y.S.2d 524, 526 (App. Div. 1992))).

Here, the Court would first have to assume that the Surrogate's Court would have converted the April 26, 2017 Return Date into a hearing had the Cohen Defendants appeared on Plaintiff's behalf. (July 2017 Ord. at 3 (stating that the Surrogate's Court denied to conduct the requested

hearing on April 26, 2017, but later provided all interested parties "the opportunity to submit any papers of their choosing stating their respective positions with supporting documentation to the Court by July 30, 2017.")).  The Court would next have to assume that testimony would have been taken, including examination of the purported witnesses to the Allegrino Will and cross-examination of the forensic document examiner retained by the Public Administrator to conduct a forensic examination of the signature of the decedent on the Allegrino Will, who had concluded that it was "highly probable that the signature . . . is not genuine." (Surr. Dec. at 3-4). The Court would then have to assume that such witnesses would alter and/or contradict their prior testimony, convincing the Surrogate's Court that the Allegrino Will met "the requirements of due execution" and otherwise overcome the forensic examiner's report. The Court would next have to assume that Plaintiff would have been permitted to re-file the Probate Petition that had been dismissed more than one year earlier in January 2016, and that that no further litigation would have occurred between the Movant and Plaintiff (or any other interested party).[14] The Court is unwilling to take the purely suppositious, speculative leap that Plaintiff would have prevailed, but for the Cohen Defendants' negligence, in the Probate Proceeding as sole heir to the $40 million estate had the Cohen Defendants appeared on the April 26, 2017 Return Date. *See, e.g.*, *Law Practice Mgmt. Consultants, LLC v. M & A Counselors & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (granting 12(b)(6) motion to dismiss legal malpractice claim where Court refused to " take

---

[14] In an Order dated April 20, 2015, the Surrogate's Court recounted how the decedent's "story reached national and international levels for the simple fact that a question has developed as to who would inherit the $40 million. Initially, Roman Blum, had appeared not to have left a Last Will and Testament and the Public Administrator was appointed to marshal his assets and search for his heirs. After national recognition of the decedent's story, including the tremendous size of his estate, the Public Administrator received hundreds of letters and phone calls from individuals claiming to be long lost relatives of the decedent. . . . The publicity surrounding this matter has produced two wills thus far which have been offered for probate . . . ." (See Doc. 50-7 at 2-3).

the considerable and purely speculative leap" that the plaintiffs would have prevailed in a litigation had counsel timely filed opposition to a motion for summary judgment).

Moreover, the proximate cause of any damages sustained by Plaintiff was not the alleged legal malpractice of the Cohen Defendants; rather, the proximate cause of any damages sustained by Plaintiff was "the intervening and superseding failure" of Plaintiff to retain successor counsel in a timely manner or otherwise protect his own interests. *Schutz*, 552 F. App'x at 80 (citing *Alden v. Brindisi, Murad, Brindisi, Pearlman, Julian, Pertz (People's Lawyer)*, 937 N.Y.S.2d 784, 785 (App. Div. 2012)). Plaintiff was given more than three months after the April 26, 2017 Return Date to submit "any papers of [his] choosing" in support of his position in the Surrogate's Court. The Surrogate's Decision was not rendered then for another approximately two months. Plaintiff's failure to take any steps to protect his own interests given his opportunity to do so for at least five months further militates against any finding of liability herein.

Accordingly, Plaintiff's claims alleged against the Cohen Defendants are dismissed.

## CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, as any amendment would be futile, and in light of the fact that Plaintiff has already amended his pleading twice, the Court dismisses the claims alleged in Plaintiff's Second Amended Complaint against Defendants with prejudice as any amendment would be futile.

The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 47, 50) and to close this case.

SO ORDERED:

Dated: New York, New York
      February 8, 2021

_____

Philip M. Halpern
United States District Judge